## BURKE et ux. v. BELLE.

### No. 9742.

Court of Civil Appeals of Texas. Galveston.

July 13, 1932.

Rehearing Denied Sept. 29, 1932.

P. Harvey, of Houston, for appellants.

Fred W. Moore, of Houston, for appellee.

PLEASANTS, C. J.

This is a suit by appellee, brought in the form of an action of trespass to try title. The land involved is a portion of lot 5 in block 29 of Englewood addition to the city of Houston, described in the petition as a strip on the west side of said lot "about two feet and 7/10 of an inch wide" at the front end of the lot on Bear street, and running back to the rear line of the lot where said strip is "about 3 feet, four or five inches in width."

In addition to the statutory requirements for a petition in trespass to try title, appellee's petition specially pleads title to the land in controversy under the several pleas of limitation prescribed by the statute in suits for the recovery of land. The suit was filed October 28, 1929.

The defendants answered by general demurrer and general denial, and specially pleaded the three, five, and ten years' statutes of limitation. They further pleaded title and possession in themselves, and asked for judgment against plaintiff giving them title and possession of the strip of land in controversy.

The trial in the court below without a jury

resulted in a judgment in favor of the plaintiff for the title and possession of the strip of land in controversy.

The record contains no findings of fact and conclusions of law by the trial court; no request therefor having been made by appellant.

The statement of facts filed by appellants contains testimony which we think sufficient to show the following facts:

. · The land in controversy is a part of the Harris and Wilson original two-league grant in Harris county. Many years ago the owner of this grant subdivided a portion of it fronting on the north side of Buffalo bayou about three miles east of the city of Houston into two tiers of smaller tracts. The second tier of these subdivisions contains four lots or tracts of land each containing 297½ acres. These subdivisions are·designated on the plat or map shown in the statement of facts as Nos. 7, 8, 9, and 10. Englewood addition to the city of Houston was laid out and platted on subdivision 7 of the Harris and Wilson grant, and a map thereof duly recorded in the office of the county clerk of Harris county some time prior to 1892. Lots 5, 6, and 12 of block 29 of this addition were conveyed by R. B. Bear to W. B. Mulvey by deed of date February 23, 1892. By mesne conveyances, recorded in the deed records of Harris county, appellee holds the title so acquired by Mulvey to lot 5 in block 29 of said addition. All taxes have been paid on this lot, as they occurred, since 1901, by appellee or his vendors. Appellee's stepfather, Mr. Underwood, obtained from an agent of the former, Mrs. W. B. Mulvey, and her second husband, W. W. Thomas, some time in 1921, a contract for the purchase of lots 5 and 6 in block 29, Englewood addition. At the time this contract was made, Mrs. Thomas owned all of the title of W. B. Mulvey in said lots. In 1921 or the first part of 1922, appellee was placed in possession of lot 5 by Mrs. Thomas, and shortly thereafter assumed the contract of his stepfather for the purchase of the lots. This contract was completed by appellee, and all of the purchase money for the lots paid and a deed made to him by Mr. and Mrs. Thomas on May 15, 1926. Appellee and his stepfather had begun the use of lot 5 before appellee was placed in possession by Mrs. Thomas. Appellee testified that, when Mrs. Thomas turned the property over to him, his stepfather had collected and placed a number of old brick and concrete rocks on lot 5 that were given him by the gas company, for which his stepfather worked; after Thomas put him in possession of the property he bought an old house and moved it on lot 5, and he and his stepfather continued to use the lot for the storage and beating up of concrete blocks and old bricks, out of which they made material for sidewalks; that at the time he so took posses-

sion of lot 5 there were no improvements of any kind on the adjoining lot 4, now owned by appellants. He further testified that appellant Morris Burke· first placed improvements on lot 4 in 1922 or 1923; that he built back of the line between lots 4 and 5 about ten feet; that he was about two years building the house he now occupies, which was completed in 1923; that Burke first built' a barn on the back end of lot 4 and lived in it while he was completing his dwelling . house; that, when Burke first began his improvements on lot 4, he built a fence on the back end of lot 4; that in March, 1924, appellee discovered that this fence was over on lot 5; that he then spoke to Burke about it, and, after he had lot 5 surveyed' by the county surveyor and the line marked with stakes, Burke said he would move the fence. When appellee began to build his house after he got his deed in 1926, he again spoke to Burke about the fence on the back end of the lot and told Burke that when he (appellee) got ready to build a fence along the line dividing the two lots they would build it together, each paying one-half of the. costs of the fence. The matter remained in this status until some time in 1928 on a day on which appellee was away from home, when Burke moved a part of this fence further over on lot 5. The testimony is somewhat confusing as to what occurred thereafter, but appellee took down a portion of this fence and put it back on lot 4. There were frequent interviews and disputes between the parties as to proper location of this fence, which finally resulted in the bringing of this suit by appellee to recover title and possession of the strip of land in controversy.

The evidence is sufficient to show that the strip of land in controversy is a part of lot 5, and we do not understand appellants to contend otherwise.

· The propositions upon which this appeal is based are, in substance, that, appellee having failed to show title from the sovereignty or from a common source, and failed to prove title by limitation, because whatever possession he once had of the land in controversy was abandoned more than six years before the filing of this suit, and appellants have held actual adverse possession of the strip in controversy during all of these six years, judgment should have been rendered in their favor.

From the foregoing statement of the facts shown by the evidence, it is clear this contention of appellants cannot be sustained.

■■ Appellee was in possession of all of lot 5, save a portion of the strip in controversy along the west line of the lot, claiming and holding it under duly registered deeds, and paying all taxes thereon for more than five years before this suit was brought, and appellants by cross-action herein set up

their claim of title and possession of the disputed strip. As shown by the facts before stated, appellee's use and possession of lot 5 began not later than 1922. According to the testimony of appellee, which the court evidently accepted as true, the appellants agreed with appellee in 1924, when he first discovered that they had fenced a portion of the strip now in dispute, that they would move the fence, and again in 1926, when ap-·pellee built his dwelling house, that when appellee got ready to build a fence they would build a partnership fence on the true line. These agreements until repudiated by appellants destroyed the adverse character of their possession of any part of the land and made them tenants at will of appellee. According to appellee's testimony, there was no repudiation of these agreements until 1928, which was six years after appellee's possession of lot 5 began.

Upon the facts before set out, we think ·the trial court correctly held that appellee ·had title to all of lot 5 under the five years' statute of limitation.

This conclusion renders it unnecessary for us to set out and discuss the several propositions presented in appellants' brief. All of these propositions are overruled, and the judgment is ordered affirmed.

Affirmed.